UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-cv-22056-XXXX

CENTURION AIR CARGO, INC.,
a Florida corporation,

        Plaintiff,

v.

AERO MIAMI III, LLC,
a Delaware limited liability company,

        Defendant.
_____

## COMPLAINT FOR DECLARATORY RELIEF & DAMAGES

Plaintiff CENTURION AIR CARGO, INC., a Florida corporation ("CENTURION"), through counsel, sues Defendant AERO MIAMI III, LLC, a Delaware limited liability company ("AERO"), for declaratory relief and damages and alleges:

### PARTIES, JURISDICTION AND VENUE

1. This action concerns recent and ongoing demands by AERO, as Landlord, to CENTURION, as Tenant, for payment of "management fees" not provided for in the parties' sublease agreement, nor at law or upon any other basis.

2. CENTURION is a Florida corporation based and doing business in this District and is the Tenant under a sublease agreement with Defendant AERO.

3. AERO is a Delaware limited liability company doing business in this District and is the Landlord under a sublease agreement with CENTURION.

4. The sublease agreement in question is governed by Florida law and concerns a tract of improved land at Miami International Airport, within this District.

5. This Court has jurisdiction over this action based on 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7. CENTURION is in the air cargo business.

8. AERO builds air terminal facilities.

9. CENTURION wished to redevelop, build, and operate additional air cargo facilities at Miami International Airport. On April 13, 2007, CENTURION procured a ground lease with Miami-Dade County, owner of the airport property, for a 30-year initial term with options by CENTURION for two successive 5-year extensions, for certain existing hangar facilities and adjacent land for the development of a new air cargo terminal (the "Premises"). A true and correct copy of that ground lease, entitled "Development Lease Agreement Between Miami-Dade County, Florida, As Lessor, And Centurion Air Cargo, Inc., As Lessee," is attached hereto and incorporated as **Exhibit 1** (the "**Ground Lease**"). The option periods are set forth in Ground Lease § 2.5.

10. An amendment to the Ground Lease was executed in 2009, extending certain required milestones under the Ground Lease.

11. Contemporaneous with the negotiation and execution of the Ground Lease, CENTURION engaged AERO to finance and perform all remodeling, demolition and construction work on the Premises (the "Project").

12. To provide for the Project's financing and construction, (a) CENTURION assigned the Ground Lease to AERO; (b) AERO assumed CENTURION's obligations under the

Ground Lease; and (c) AERO sublet the entire Premises back to CENTURION, via an April 16, 2007 "Lease Agreement," a true and correct copy of which is attached hereto and incorporated as **Exhibit 2**.

13. CENTURION and AERO amended the Sublease on three occasions: (a) Amendment No. 1 on December 22, 2009, (b) Amendment No. 2 on July 18, 2011, and (c) Amendment No. 3 on November 21, 2012. True and correct copies of the Amendments are attached hereto and incorporated as **Composite Exhibit 3**. Collectively, Exhibits 2 and 3 are referred to as the **"Sublease"** hereinafter.

14. The Sublease provides that all costs associated with the use and operation of the Premises shall be "totally net" to AERO (Sublease § 2.8), *i.e.*, paid by CENTURION directly to third parties or as a pass-through of third-party charges outlaid by AERO, and with no economic effect on AERO, including all Ground Lease rent to the County, as well as all taxes, utilities, insurance, and the like.

15. Due to Sublease Amendment No. 1, certain entities named in the Sublease as additional tenants were withdrawn, and are not interested or necessary parties to this action.

16. CENTURION became liable for rent under the County's Ground Lease beginning in January 2012, due to the expiration of a free rent period to allow for completion of the Project.

17. The rent commencement date under the Sublease is called the "Date of Beneficial Occupancy," the date AERO's construction work was substantially completed. According to a "Memorandum Of Date Of Beneficial Occupancy And Base Rent" executed by AERO in January 2013 (a true and correct copy of which is attached hereto and incorporated as **Exhibit 4**), the Date of Beneficial Occupancy was January 15, 2013.

18.     Pursuant to Sublease § 2.2, and as stipulated in Exhibit 4 hereto, CENTURION owes AERO monthly base rent at an initial rate of $18.00 per gross square foot of vertical improvements (the "Lease Rate"), subject to certain adjustments set forth in the Sublease.

19.     Except for development work predating the Date of Beneficial Occupancy (*e.g.*, erecting improvements, performing demolition, and designing and building a taxiway), CENTURION bears all obligations under the County's Ground Lease. Sublease, § 1.1.

20.     AERO is not entitled to a fee, charge, rent or payment of any kind from CENTURION under the Sublease, other than base rent (§ 2.2), any late charges assessed by the County under the Ground Lease (§ 2.3), certain County rental credits (§ 2.1.2), and certain limited repairs necessitated by any negligent or willful misconduct of CENTURION (§ 7.1). Any actual charges beyond base rent would be pass-through "Additional Rent" to AERO.

21.     Other than specified post-construction obligations, such as warranty repairs or replacements, AERO's duties under the Sublease regarding the Premises' occupancy and use ended with the Date of Beneficial Occupancy.

22.     All financial obligations relating to the Premises after the Date of Beneficial Occupancy are CENTURION's alone, including all rent to the County under the Ground Lease (Sublease § 2.1), all personal property taxes (§ 2.5.1), real estate taxes and other government levies, charges, local improvement rates, impositions and assessments (§ 2.5.2), utilities (§ 2.6), and the security deposit due to the County under AERO's Ground Lease (§ 2.7).

23.     Sublease § 2.8 provides:

> <u>NET LEASE</u>. Except for Landlord's [*i.e.*, AERO's] obligation to construct the Improvements pursuant to the Construction Addendum and as may otherwise be specifically set forth herein [*i.e.*, in the Sublease], Tenant [CENTURION] acknowledges that ***this Lease shall be totally net to Landlord*** and ***Landlord shall not be liable for any costs or expenses of any nature whatsoever*** relating to the Premises or the use and occupancy

thereof, or the contents thereof, or the business carried on therein, and Tenant shall be solely responsible for any such costs, charges, expenses and outlays, including, without limitation, any such costs or expenses of "Lessee" [*i.e.*, AERO] under the Development Lease [*i.e.*, the Ground Lease] and/or any applicable management fees. Any obligation which is not expressly declared to be that of Landlord shall be deemed to be the obligation of Tenant to be performed by and/or at the expense of Tenant. [Emphasis added.]

24. Sublease § 7.1 provides, in relevant part:

<u>LANDLORD'S OBLIGATIONS</u>. … [E]xcept as specifically set forth in this Section 7.1 above [certain limited repairs if occasioned by CENTURION's negligent or willful misconduct] and in Article X of the Construction Addendum, Tenant acknowledges and [agrees] that ***Landlord shall have no obligation, in any manner whatsoever, to repair and maintain the Premises, or any portion thereof, all of which obligations are intended to be that of the Tenant***. Landlord and Tenant acknowledge and agree that the terms of this Lease govern the respective obligations of the parties as to maintenance and repair of the Premises, and they expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease. [Emphasis added.]

25. All of AERO's rights and remedies under the Sublease are subject and subordinate to the County's Ground Lease. Sublease, §§ 1.1, 1.3.1.

26. The Ground Lease does not provide for any type of cost, charge, expense or outlay for any management service whatsoever to be paid to the County.

27. AERO has not been charged or obligated to pay any third party for any "management fee" in connection with the Premises, nor has it claimed otherwise.

28. AERO itself has provided CENTURION with no management service, whether directly or through an agent, at any time, nor is AERO obligated or entitled to do so.

29. Nowhere in the five-plus years of their business relationship predating the Date of Beneficial Occupancy did AERO advise CENTURION of a basis for any management service in connection with CENTURION's use and occupancy of the Premises, or of a basis for any charge for any management by AERO or by a third party charged to AERO, concerning the Project.

30. Nowhere in the Sublease or the Ground Lease, or in any amendment to either contract, nor in any correspondence between the parties, did the notion of AERO charging any sort of fee to CENTURION for any management ever arise, much less approach an agreement.

31. At no time prior to the Date of Beneficial Occupancy did the topic of a management service or management fee ever arise as between CENTURION and AERO.

32. Accordingly, there never has been an agreement or basis, either under the Sublease or the parties' relationship or course of dealing, which could support AERO demanding CENTURION to pay AERO any form of management fee.

33. Nonetheless, commencing January 16, 2013, AERO has presented monthly invoices to CENTURION demanding approximately $50,000 as a purported monthly "management fee" in addition to the base rent contemplated by the Sublease. The purported fee represents three percent (3.0%) of the base rent of approximately $1.5 million per month. AERO is also charging 7% sales tax on that figure.

34. Specifically, AERO has claimed a "management fee" to date as follows:

   a. $22,539.30, prorated for January 16 to 31, 2013
   b. $49,895.33 for February 2013
   c. $50,120.58 for March 2013
   d. $48,320.65 for April 2013
   e. $48,576.01 for May 2013
   f. $48,576.01 for June 2013

Attached hereto and incorporated as **Composite Exhibit 5** are AERO's Rental Invoices with spreadsheets detailing the calculations of the purported "management fees."

35. AERO, without any valid basis, has demanded and continues to demand from CENTURION approximately $600,000 annually over the next 30 years, not including escalations in the Lease Rate under the Sublease, or *over $18 million* beyond what is called for

under the Sublease. Should CENTURION exercise either or both of its 5-year options to extend the lease to 35 or 40 years, and should AERO likewise demand about $600,000 annually beyond the Sublease requirements, then the figure in question rises to over $21 to $24 million.

36. CENTURION asked AERO about the "management fee" which first materialized on its bills in 2013. *See* emails from March 20 through April 2, 2013, attached as **Exhibit 6**.

37. AERO advised CENTURION, initially by emails (Exhibit 6), that it is justified in charging CENTURION over $18 million in "management fees" under Sublease § 2.8.

38. On April 9, 2013, CENTURION notified AERO by letter (attached hereto and incorporated as **Exhibit 7**) that it disputes the arbitrary "management fee" for the first three months' invoices (January, February, and March 2013), as to both the 3% rate and the alleged right to charge at any rate.

39. By letter of April 23, 2013 (attached hereto and incorporated as **Exhibit 8**), AERO reasserted its position of entitlement to the $18 million-plus in management fees over the life of the Sublease.

40. To date, CENTURION has, under protest, paid AERO's first five monthly installments (*i.e.*, through the May 1, 2013 invoice) of the disputed management fee charge, and has hired counsel to analyze the claim and prepare this declaratory action.

41. Section 2.8 of the Sublease – which reiterates the theme of a pass-through sublease that is "totally net" to AERO – does not state that AERO itself may charge CENTURION any management fee. Rather, § 2.8 provides that should any third-party management fee ever be charged in connection with the Premises, its occupation, use, contents, or the business conducted there, then it would be CENTURION's responsibility – and not AERO's – to pay to such a third party charge, whether directly or by reimbursing AERO for such

an outlay. Section 2.8 does not grant AERO the right to create and impose unilaterally any management fee, let alone the arbitrary 3% demanded.

42. AERO has identified no actual third-party management charge to be recouped. Likewise, AERO has identified no service provided by AERO after the Date of Beneficial Occupancy (January 15, 2013) which would entitle it to any additional charge, much less charges of $18 million-plus. AERO has identified nothing under the Sublease entitling AERO to provide any service for which it is not already compensated through the hundreds of millions of dollars in rent payments under the Sublease.

43. Because there is no basis for any form of management fee to AERO – but AERO claims otherwise – CENTURION requires judicial determination of the parties' respective rights and responsibilities on this distinct issue.

## MISCELLANEOUS

44. All conditions precedent to the institution of this action have occurred, have been performed, or have been waived.

45. Plaintiff has retained undersigned counsel in this action and has undertaken to pay them a reasonable fee for their services and to bear all associated expenses.

46. Pursuant to Sublease § 8.3, CENTURION is entitled to recoup its costs and expenses, including reasonable attorneys' fees, in this action arising out of the Sublease.

## COUNT I

## DECLARATORY RELIEF

47. CENTURION realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. This Court is authorized to declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought.

49. A real and justiciable controversy exists between the parties with respect to AERO's imposition of a management fee in connection with the Sublease, as set forth hereinabove.

50. CENTURION is entitled to a declaration of the rights and liabilities of the parties to this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

51. CENTURION is uncertain as to all of its rights and obligations and requires a determination by the Court of the parties' respective present and future rights and obligations under § 2.8 of the Sublease, as set forth hereinabove.

52. Accordingly, CENTURION requests judgment declaring the rights and interests of CENTURION and AERO under the Sublease as to AERO's purported management fee.

## COUNT II

### UNJUST ENRICHMENT

53. CENTURION realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

54. AERO received benefits from CENTURION.

55. AERO voluntarily accepted, retained and took the benefits conferred by CENTURION and is enjoying said benefits at CENTURION's expense.

56. The circumstances are such that it would be inequitable for AERO to retain the benefits without paying the value thereof to CENTURION.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CENTURION AIR CARGO, INC. prays for judgment against Defendant AERO MIAMI III, LLC, as follows:

a. For a declaration of the rights, interests, liabilities and obligations of Plaintiff and Defendant in reference to Defendant's demand for monthly "management fees" as set forth hereinabove;

b. For the return to CENTURION of all sums paid for the demanded "management fees," together with interest and costs;

c. For CENTURION's costs, including reasonable attorneys' fees; and

d. For any such other, further and/or supplemental relief as the interests of justice may require or permit.

Dated this 7th day of June, 2013.

By:   */s/ Roger S. Kobert*
Roger S. Kobert (Fla. Bar No. 765295)
rkobert@wsh-law.com
Robert H. de Flesco, III (Fla. Bar No. 90831)
rdeflesco@wsh-law.com
WEISS SEROTA HELFMAN
PASTORIZA COLE & BONISKE, P.L.
2525 Ponce de Leon Boulevard, Suite 700
Coral Gables, FL  33134
(305) 854-0800   Tel.
(305) 854-2323   Fax

*Counsel for Plaintiff*